# FLETCHER
*v.*
# THE BALTIMORE AND POTOMAC RAILROAD COMPANY.

RAILROADS ; MASTER AND SERVANT ; NEGLIGENCE.

Where one of a number of railroad employees returning home from work on a repair train upon which was a quantity of refuse timber gathered by them during the day to be thrown off as they passed near their homes, as had been the practice for several years, threw a piece of the timber from the train and thereby accidentally injured a person standing on an adjacent sidewalk, it was *held* that the employee was acting beyond the scope of his employment, and the railroad company was not chargeable with his negligence.

No. 438.   Submitted April 19, 1895.   Decided June 3, 1895.

HEARING on an appeal by the plaintiff from a judgment on a verdict directed by the court in an action to recover damages for personal injuries. *Affirmed.*

The COURT in its opinion stated the case as follows :

This is an action brought by the appellant, Richard H. Fletcher, against the appellee to recover damages for injuries received by the former, occasioned, as alleged, " by and through the carelessness and negligence of the defendant, its servants and agents," &c. The general issue plea of not guilty was pleaded by the defendant, and there were verdict and judgment for the defendant, and the plaintiff has appealed.

The material facts of the case are briefly, but very clearly and fairly stated, in the brief of counsel for the plaintiff, which statement we shall adopt, with but slight addition or variation.

The evidence, as set forth in the bill of exception, tends to prove that the defendant is a railroad company, operating a railroad from and through the city of Washington, and as such was in the daily habit, for eight or ten years or more, of running every morning out of Washington and Alexandria, a repair train of open flat cars loaded with its employees ; that this train returned every evening about six o'clock, bringing the workmen back to their homes ; that these men were allowed the privilege of bringing back with them for their own individual use as firewood, sticks of refuse timber left over from their work after repairing the road, such as old pieces of bridge timber, old cross-ties, etc.; that it was the constant and daily habit of the men during all these years to throw off these pieces of firewood while the train was in motion at such points on the road as was nearest their homes, where it was picked up and carried off by some member of their families, or other person waiting there for it. The only caution given the men was " that they should be careful not to hurt any one in throw-

ing it off." This instruction was given by the foreman of
the gang. On the 16th of May, 1890, the plaintiff was
working at the workshops of the defendant; and he had
finished his work for the day at about a quarter of six in
the evening and had started for home. When he reached
the intersection of South Capitol street and Virginia avenue
" he stopped to see if he could see any of the workmen
coming, in order to have company on his way home ; he
was standing on the pavement on the south side of the rail-
road track,"—the track being in the middle of Virginia
avenue. While standing there the repair train passed on
its return from work for the day. It was moving more or
less rapidly according to the testimony of the various wit-
nesses. One of the workmen aboard the train threw from
the car in which he was standing, and just as it was passing
the plaintiff, a stick of bridge timber six inches square and
about six feet long. It struck the ground and, rebounding,
the end of it struck the plaintiff in the region of the groin,
and seriously injured him, so much so that he has never
been the able-bodied man that he was before the accident.
The morning after the plaintiff was injured orders were is-
sued by the company that the men should throw off no
more wood while the train was in motion. These facts
being given in evidence to the jury, the court, upon motion
of the defendant's attorney, directed a verdict for the de-
fendant, which was accordingly rendered, and this ruling
of the court constitutes the only assignment of error.

*Mr. Franklin H. Mackey* for the appellant:

The question of law arising upon the evidence is, was
the plaintiff entitled to have the jury consider it. The
affirmative of this proposition is here contended for. It is
insisted :

1. That this practice of throwing wood from the moving
trains had continued for so long a time (eight or ten years),
was so frequent, so open, and so notorious, that knowledge

of the practice might well have been imputed by the jury to the defendant, and it was error not to permit them to consider the question.

2. That the practice of permitting the workmen to thus bring home the refuse timber belonging to the company was not wholly without benefit to the company; it cleared their road of refuse timber, and, in addition, operated as an inducement to the men to work for the company; they obtained this firewood free, and it is reasonable to presume that on this account they were contented to work for smaller wages and were more satisfied to remain in the employ of the company, so that the practice was one which it was to the interest of the company not to prohibit. This view of the matter was one that the jury might well have entertained from the evidence before them, and they should have been allowed to pass upon it. To refuse to do so was error.

3. Even if the jury had found that the practice was of no benefit to the company and was not expressly or impliedly authorized by it, nevertheless, if they knew or should have known of its existence, and that its train was being constantly used as a necessary means of carrying on a dangerous practice to by-passers, knew that this was being done by men in its employ, and knew that it had the power to prohibit it, yet nevertheless did not prohibit it, then it is liable to respond in damages to the plaintiff. *Walker* v. *Railroad Co.*, 26 S. W. Rep. 363.

The declaration charges that the plaintiff was injured "by and through the carelessness and negligence of the defendant, its servants and agents." It is submitted that the facts in evidence abundantly tend to prove the charge and that the court erred in not permitting the evidence to be considered by the jury. There are two maxims of the law which are plainly applicable to this case, namely, *Sic utere tuo ut alienum non laedas. Qui non prohibet, cum prohibere possit, jubet.*

When a railroad company undertakes the business of

running its trains through and along the busy streets of a crowded city the duty is at once imposed upon it of exercising such a degree of care in the management of its trains as will eliminate, as far as it is reasonably possible, every known element of danger to pedestrians, and if instead of doing this it knowingly permits its employees who are aboard these moving trains to use them in a manner dangerous to persons passing upon the streets, as, for instance, to permit them to habitually carry sticks of firewood upon the train and to throw them from the cars while in motion, though it be for their (the employees) exclusive benefit, the company will be liable if any person is injured thereby, for whenever and wherever a person is chargeable with proper care in the use of his property, he is, under the maxim *sic utere, etc.*, liable if he knowingly permits his employees to use it in a manner dangerous to the public where injury results from such use. *Railroad Co.* v. *Harmon*, 47 Ill. 298.

Where the master owes certain duties either to third persons or the *public*, whether the same arises from contract or statutory obligations, he becomes absolutely responsible for the *manner* in which the duty is performed, precisely as though he himself had performed it, and this without any reference to the question whether the servant was *authorized* to do the particular act. Wood M. & S., sec. 321. In accordance with this rule it was held by the Supreme Court of the United States in *Railroad* v. *Derby*, 14 How. 468, that where the servant of a railroad company took an engine and ran it over the road for his own gratification, not only without consent, but contrary to express orders, the railroad company was responsible. So in *Railway* v. *Hinds*, 53 Penn. St. 512, a passenger's arm was broken in a fight between some drunken persons who forced their way into the car at a station near an agricultural fair, and the company was held liable, because the conductor went on collecting fares, and did not stop the train and expel the rioters, or demonstrate by an earnest effort that it was impossible to do so.

4. It was held by the court below that because these pieces of wood were being carried by the workmen for their personal uses and not for any purpose of the defendant they could not be said to be doing anything within the scope of their employment, and on the principle that the master is not liable for any act of the servant done for his (the servant's) benefit and not within the scope of his employment the defendant could not be held to respond in damages to the plaintiff. But it is submitted that the court lost sight of an important element of this proposition and that is that the *jury* should be allowed to pass upon the question whether the servant in doing the act complained of was doing it *entirely* for his own benefit. The jury should also have been allowed to pass upon the the question whether this practice was carried on with the permission and *authority* of the defendant. Both of these features of the case were lost sight of by the court, and not only these but still another important matter for consideration was ignored—namely, that there is a great difference between an *isolated* act done by an employee who had given his master no reason to suppose that the act would be done, and an act done in pursuance of a long established practice or custom which the master knew of and had never prohibited. *Snow* v. *Fitchburg Railroad Co.*, 136 Mass. 552.

5. It remains only to refer briefly to one point raised by the defendant in the court below, and which may be brought forward again in this court. It was argued that the plaintiff was an employee of the defendant, and that as the men who threw the sticks of wood were also employees of the same master, they must be deemed fellow servants. But this proposition cannot be maintained under the facts. The plaintiff had finished his day's work and was on his way home and it is well settled that a workman is not a fellow servant to other workmen when he has finished his work and left his place of employment and is on his way home. See *B. & O. Railroad* v. *Trainer*, 33 Md. 542, 554; *Baird* v. *Pettit*, 70 Pa. St. 477, 483; *Hurst* v. *C. R. I. & P. Railroad*, 49 Iowa, 76.

*Mr. Enoch Totten,* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

On this single assignment of error the question is, whether the facts disclosed such case of negligence on the part of the defendant as entitled the plaintiff to recover; for if, conceding the truth of the testimony, and all fair inferences deducible therefrom, the court could not perceive that there was rational ground upon which to base a verdict for the plaintiff, it was its duty to direct a verdict for the defendant, and not to subject the case to groundless and unrestrained speculation by the jury, as to the liability of the defendant, on insufficient proof.

In what, then, did the supposed negligence of the defendant consist? The defendant was not in the exercise of its ordinary business of common carrier, and the plaintiff bore no such relation to it as that of the passenger. He stood simply in the relation to the defendant of a stranger rightfully on the public way or street. Nor was the relation of master and servant existing at the time of the accident, as to the running and conduct of the repair train, as between the defendant and the day laborers, who were allowed to ride home on the train after finishing their day's work. There is nothing in the evidence to show upon what terms or conditions the men were allowed to ride upon the train to and from their work, as in the case of *Vick* v. *N. Y. Central Railroad Co.*, 95 N. Y. 267, and the other cases cited. It is not contended that there was negligence in the humane indulgence of allowing the laborers the privilege of bringing in on the train the refuse wood or timber gathered up along the road, to be used as fuel. Assuming knowledge on the part of the defendant, the only act of which negligence could be predicated was in allowing the men to drop or throw off from the moving train along the street, the wood brought in by them, to be taken to their homes for fuel. This, as

the evidence shows, had been a practice indulged for several years, and there had never been an accident resulting therefrom before, and there had been no complaint of the habit either by the police of the city or by others; at least there is no evidence of such complaint. Under the circumstances, we do not think the mere allowing the wood to be thrown from the moving train was culpable negligence on the part of the defendant, *per se;* though, of course, the manner of throwing off the wood in a particular instance might constitute negligence. The person who threw off the piece of wood that injured the plaintiff was not in the performance of any duty required of him by the defendant, but his act was wholly independent of any duty imposed upon him by his employment to work for the defendant. In other words, his act was not within any limit or scope of authority derived from the defendant, as agent or servant in the performance of duty. If the injury was not one of pure accident, but was the result of negligence in the manner of throwing off the log, the party doing the act would be responsible therefor. It would certainly be exceedingly hard to hold the defendant company responsible, and to do so would seem to be justified by no well settled principle of law.

There are not many cases to be found in the books that have any direct bearing upon the facts of this case. But we think the case of *Walton* v. *New York Central Sleeping Car Co.*, 139 Mass. 556, has a close analogy to it, and in principle goes far in the direction, if not quite to the extent, of being decisive of this case.

In that case the plaintiff was in the employ of the B. & A. Railroad Company, as a laborer and track repairer, and, on the day of the injury received, was, under the direction of the railroad company, rightfully on its tracks, engaged in the performance of his duties, and in the exercise of due care, when an express train passed rapidly by, on an adjoining track, and a bundle thrown from the passing train hit the plaintiff, and caused the injuries complained of. In this express train was a parlor car, owned by the defend-

ant, the sleeping-car company, carried on special terms. The defendant employed on the car a conductor, who collected the fares for seats, and had general charge and management of the car; and a porter, one Maxwell, whose business it was to take charge of the car, keep it clean and in order, serve the passengers, and remove rubbish from the car, and who was under the conductor. He was allowed by the defendant to bring in, and keep in a closet in the car, where articles of the defendant were also kept, a satchel and other articles of his own, to which closet he had a key. As this car was passing through Newton on the day of the accident, Maxwell went out upon the platform of this car, and threw off a paper bundle, containing soiled clothing belonging to himself, together with a paper box containing some articles of his own. It appeared that Maxwell, the evening before, had arranged with a woman, living near by, to throw the bundle at this point from the train, so that she could get it and to wash the soiled linen. This bundle so thrown struck the plaintiff and inflicted the injury. Maxwell had never thrown a bundle in that way before. He had no duty in regard to the washing of the linen used in the car, which was washed in Boston, and attended to by other servants than Maxwell. Maxwell testified that no person directed him to throw off the bundle, and that he threw it off for his own convenience solely.

The plaintiff asked the trial judge to rule that, on the facts stated, he was entitled to recover. But the judge refused so to rule, and, instead thereof, ruled as follows:

"The defendant is not responsible, if the injury to the plaintiff was done by Maxwell, the servant of the defendant, without the authority of the defendant, and not for the purpose of executing the defendant's orders, or doing the defendant's work, and not while acting as such servant, in the scope of his employment. If Maxwell was employed by the defendant as a porter upon its parlor car, and, wholly for a purpose of his own, and disregarding the object for which he was employed, and not intending by his

act to execute it, negligently threw a bundle, his own property, from the platform of the parlor car, and thereby the plaintiff, who was not a passenger, was hit and injured while in the exercise of due care, and if this injury was done by Maxwell not within the scope of his employment, then the defendant is not liable.  If, however, Maxwell negligently threw the bundle in the execution of the authority given him by the defendant, and for the purpose of performing what the defendant had directed, or if the injury to the plaintiff was done by Maxwell while acting within the scope of his employment, then the defendant would be liable."

The judge also ruled, that, upon the whole evidence, the plaintiff was not entitled to recover.  And upon a review by the Supreme Court of the State, it was held that these rulings were correct; and in a brief opinion by the Supreme Court, it was said :

" The rulings and instructions of the court were correct. There was no evidence that Maxwell was employed by the defendant to take care of his own clothing and personal effects.  The act complained of was not within the scope of his employment ; and it is wholly immaterial that he was, at the moment, riding in a car of the defendant in which he was employed by it for other purposes."

That case, it seems to us, was rightly decided, and decided upon principle that is applicable here.  If the owner of the parlor or sleeping car in that case was properly exempt from liability, it is difficult to perceive why, or upon what principle, the defendant in this case should be held liable.

The case mostly relied upon by the plaintiff in the case of *Snow* v. *Fitchburg Railroad Co.*, 136 Mass. 552.  But that case presents features quite distinguishable from the case before us.  There the plaintiff was a passenger on the defendant's road ; and while waiting in a proper place and using due care, on the platform at the station of the defendant, to make a necessary change from one train to another,

the plaintiff was struck and injured by a mail bag thrown from a rapidly passing train by a United States mail agent. And, as declared by the court, " there was evidence in the case tending to show that mail bags had not unfrequently been thrown from that car, in such a way as to strike upon the platform where the plaintiff stood ; and if such evidence was believed, the court was justified in inferring that the defendant knew, or, in the exercise of proper care, ought to have known this." That, therefore, was simply a negligent and dangerous manner of performing a duty owing to a passenger by a railroad company. The company was bound to exercise towards the plaintiff in that case, " such care and diligence as could reasonably be exercised to protect her from such injuries as human foresight could anticipate and prevent." And though the mail bag was thrown out by the United States mail agent, yet it was the duty of the railroad company to provide for and see to the safe and proper delivery of the mail bag from the train, so that it should not imperil the life or limbs of the passengers on its trains. That case, we think, does not in any manner control in the decision of the present case.

We are of opinion that the court below, upon the facts before it, was correct in directing the verdict for the defendant ; and the judgment must therefore be affirmed.

*Judgment affirmed.*